**TEXAS RESERVE LIFE INSURANCE COMPANY, Appellant,**

v.

**TEXAS REHABILITATION CENTER OF GONZALES WARM SPRINGS FOUNDATION, INC., Appellee.**

No. 13557.

Court of Civil Appeals of Texas.

San Antonio.

Feb. 3, 1960.

Rehearing Denied March 3, 1960.

Bruckman & Wagner, San Antonio, for appellant.

Perkins & Vollentine, Gonzales, for appellee.

BARROW, Justice.

This is an appeal from a judgment rendered in two suits, which were consolidated by the trial court, in favor of plaintiff, Texas Rehabilitation Center of Gonzales Warm Springs Foundation, Inc., and against defendant, Texas Reserve Life Insurance Company. One suit was on a health and accident policy issued to Billy F. Curry and duly assigned by him to appellee, Texas Rehabilitation Center of Gonzales Warm Springs Foundation, Inc., and the other was on a health and accident policy issued to Sam Jenkins and wife, Julia Ann Jenkins, and duly assigned by them to appellee.

Both policies were issued by Great American Health and Life Insurance Company and duly assumed by appellant, Texas Reserve Life Insurance Company.

Cause No. 10998 was a suit to recover upon the policy issued to Billy F. Curry, for loss resulting from hospital confinement and other specified losses resulting from bodily injuries by accidental means and by sickness. And Cause No. 10999 was a suit to recover upon the policy issued to Sam Jenkins and wife, Julia Ann Jenkins, for losses caused by hospital and other specified expenses resulting from bodily injuries and sickness.

Appellant's first point presents the contention that there is no liability in the Jenkins case because of the failure to show that Mrs. Jenkins was confined as a bed patient within a hospital which was approved by the Medical Society where said hospital was located.

The second point presents the contention that there is no liability in the Curry case because of the failure to prove that Billy F. Curry was confined in a hospital under the terms of the policy of insurance.

These points involve largely the same evidence and present the same legal questions and, therefore, will be considered jointly. The only testimony in the case is that of appellee's witnesses, Kenneth W. Davis, business manager of the hospital, and Dr. Odon F. Von Werssowetz, medical doctor in charge of the patients. The following facts are shown:

Mrs. Jenkins entered the hospital October 27, 1958, and was discharged March 20, 1959. In November, 1955, she suffered what is commonly known as a stroke. She was paralyzed in her right arm and leg and her speech was greatly impaired. She had not walked since the stroke and could do little otherwise. During her hospitalization she was given therapeutic passes to go home week-ends, at first about once a month, and later, as the treatment progressed, these passes were used more frequently. Each of the passes was for two days. They were used for two reasons: to try out at home what the patient had learned at the hospital, and to rehabilitate her emotionally and psychologically. The testimony shows that such treatment is recommended by hospitals generally in such cases. For the same reasons Mrs. Jenkins was allowed to sit in the lounge and watch T.V. for short periods of time. When she entered the hospital she was assigned a bed where she stayed at all times except during the limited periods above mentioned. During the passes she remained a patient and her bed was still assigned to her. All of the above outlined procedure was a part of the prescribed treatment in such cases.

The facts above stated are also applicable to the case of Billy F. Curry, with the following variances and differences. Billy Curry was injured in April, 1956, in a trampoline accident and sustained a fracture of the fourth and fifth cervical vertebrae. As a result thereof, and when admitted to the appellee hospital, he was almost completely paralyzed from his neck down, except that he had some movement in his shoulders and elbows. Billy was admitted to the hospital on January 26, 1959, and was discharged on March 13, 1959. During that time he remained a regular patient in the hospital, and during that period he also was given therapeutic passes, as a part of the treatment, for the same reasons as in the case of Mrs. Jenkins, but his passes were for only six hours at a time.

We shall not lengthen this opinion with further details of the treatments, either medically or physically, or the reasons therefor, but it may be reasonably inferred from the evidence that both patients were helpless when admitted to the hospital and at their discharge they were able to walk in a very limited way, with personal assistance and with the aid of therapeutic appliances.

The question here presented is: Were these patients confined within the terms of the respective policies? The policies involved are what is known as sickness and accident policies and provide for the payment of certain hospital, medical and other related expenses by the insurer under the terms thereof.

The Curry policy required Billy F. Curry to be confined within an incorporated or licensed hospital. The Jenkins policy required Mrs. Jenkins to be confined as a bed patient in any hospital in the world which is approved by the Medical Society where such hospital is located.

Appellant's contention is that Billy Curry's confinement under the evidence did

not measure up to the test. In the Jenkins case the same contention is made, together with the additional contention that there is no evidence to show that appellee hospital was approved as required.

■ Regarding appellant's contention that the patients, Billy Curry and Mrs. Jenkins, were not confined in the hospital as provided by the policies, we think the law is well settled in Texas that temporary absence from the hospital for the purpose stated, and as a part of the treatment of the patient, does not, as a matter of law, constitute a fatal variance from the terms of the policy. The facts in evidence support the trial court's implied findings that Billy Curry remained confined within the hospital, and that Mrs. Jenkins remained confined as a bed patient in the hospital. American Casualty Co. v. Horton, Tex. Civ.App., 152 S.W.2d 395; National Benevolent Soc. v. Price, Tex.Civ.App., 32 S.W.2d 683; Standard Accident Ins. Co. v. Brock, Tex.Civ.App., 1 S.W.2d 678; Fed. Surety Co. v. Waite, Tex.Civ.App., 297 S.W. 312; Southern Surety Co. v. Diercks, Tex.Civ.App., 250 S.W. 755. For other authorities see, 29 A.L.R.2d 1427 et seq. While some jurisdictions have adopted the strict and literal construction of the expression "confined within the house," and similar expressions, the majority of jurisdictions, including the State of Texas, have adopted a liberal construction. Under such construction the courts have held, even in cases where the policy required the confinement to be "continuous," that where the absences were only occasional, for therapeutic reasons and under the advice of physicians, if otherwise the confinement was continuous, such absences would not defeat the right to recover. Authorities supra. The same rule has been applied in construing the provision, "confined to bed." Washington Nat. Ins. Co. v. Curry, Tex.Civ.App., 97 S.W.2d 525, 527.

■ Appellants contention that the evidence fails to show that appellee hospi-

tal is approved by the Medical Society where the hospital is located must be rejected. Appellee's witness Davis testified unequivocally that it was. Appellant contends that his testimony in that respect is based upon hearsay. We note that he was not questioned as to the source of his knowledge. There is nothing in the record to show that he was testifying other than from personal knowledge. The burden is on appellant to show error.

■ By its third point appellant contends that the court erred in granting judgment for $25 for X-rays, for the reason that there was no proof that Billy Curry was X-rayed. The point is overruled. Appellee proved its account under and strictly in accord with the shop book rule. No objection was urged thereto by appellant. The account contained two X-rays, as items listed therein.

Appellant presents its fourth and fifth points as follows:

> "That the Court erred in granting Plaintiff judgment for One Thousand Two Hundred Twenty One Dollars and Thirty Three Cents ($1,221.33) against defendant in the policy sued on by Plaintiff in Cause No. 10,998.
> "That the Court erred in granting Plaintiff judgment for One Thousand Twenty Five Dollars and Seventy Six Cents ($1,025.76) against Defendant in the policy sued on by Plaintiff in Cause No. 10,999."

■■ These points clearly do not comply with Rule 418, Texas Rules of Civil Procedure, requiring that points of error direct the attention of the Court to the errors relied on. These points are so general as to encompass any and every error committed by the trial court and, therefore, mean nothing. McWilliams v. Muse, 157 Tex. 109, 300 S.W.2d 643; Alston v. Rhoades, Tex.Civ.App., 316 S.W.2d 182; Hardwick v. Jackson, Tex.Civ.App., 315 S.W.2d 440; Paul v. Johnson, Tex.Civ. App., 314 S.W.2d 338; Miguez v. Miguez,

Tex.Civ.App., 221 S.W.2d 293. Nevertheless, we have considered the statements and argument under these points, presenting numerous complaints as to pleading, evidence and the entry of judgment, and find them without merit.

By its sixth point appellant contends that the "Court erred in granting judgment for Plaintiff herein as Plaintiff failed to prove that policyholders; namely, Billy F. Curry and Julia Ann Jenkins, were not entitled to free hospitalization as set out in said policies of insurance herein sued on." This is an affirmative defense which appellant is required to plead and prove in order for it to be available to it. Rules 54 and 94, Texas Rules of Civil Procedure; Calvert Fire Ins. Co. v. McClintic, Tex.Civ.App., 267 S.W.2d 568; 3A Tex.Jur. p. 172, § 139.

Finding no error, the judgment is affirmed