**LIDO INTERNATIONAL, INC., et al., Appellants,**

**v.**

**Jerrel LAMBETH, et ux., Appellees.**

**No. 20348.**

Court of Civil Appeals of Texas, Dallas.

May 20, 1980.

Rehearing Denied June 18, 1980.

Warren E. Zimmerman, Dallas, for appellants.

James L. Schutza, Dallas, for appellees.

Before ROBERTSON, CARVER and HUMPHREYS, JJ.

CARVER, Justice.

Lido International, Inc., and Abbas Ghanei appeal from a summary judgment denying them relief against Jerrel and Nina Lambeth in a suit brought to set aside a foreclosure sale of commercial real estate under a deed of trust. Lido and Ghanei assert (1) that, although the deed of trust recited a specific address for any notice to the debtor of a foreclosure, the creditor was, nevertheless, obligated to give the debtor notice at his current actual address since the creditor knew that address and (2) that where the creditor accepted nine installment checks in advance, nonpayment on presentation of one of the checks did not constitute a default of the note. We find that a notice of foreclosure, sent to the specific address of the debtor as set out in the deed of trust, complied with the parties' contract for notice of foreclosure as well as with the statutory requirement for notice of foreclosure and that a creditor's acceptance of the checks of a debtor, representing and dated for future debt installments, do not constitute "payment" of the installments unless and until the checks are presented and actually paid. Consequently, we affirm.

This case arises as a result of a foreclosure by the Lambeths' trustee, under a deed of trust, on certain real property located in Dallas County, Texas. Ghanei, a citizen of Iran, had purchased the property in ques-

tion from the Lambeths on or about August 24, 1977. Ghanei paid $50,000 down in cash and executed a promissory note in the amount of $300,000, payable in equal monthly installments for 300 months. The Lambeths were the holders and owners of the note. Ghanei also executed a deed of trust which provided that, upon default, the Lambeths could accelerate the note and have the property sold by the trustee to satisfy the indebtedness. The deed of trust also specified the address to which *all written notices*, required by the instrument, or by applicable Texas statutes, would be sent. By the terms of the promissory note, Ghanei waived notice of intention to accelerate and presentment for payment. Ghanei later conveyed the property to Lido, a corporation of which Ghanei was president, chairman of the board, and controlling stockholder. Lido agreed to take the property subject to the deed of trust, but there was no assumption agreement between Lido and the Lambeths. As a result, Ghanei remained personally liable on the indebtedness. On or about February 22, 1979, Lido leased the property in question to Houston Irvine Industrials. Shortly thereafter, due to political turmoil in his native country, Ghanei decided to return to Iran. On March 9, 1979, Ghanei informed Lambeth that he was returning to Iran and gave an address and telephone number in Iran where he could be reached. Ghanei also gave Lambeth nine checks to cover nine monthly payments. Ghanei left for Iran on March 10, 1979. In April 1979, Ghanei's monthly check was dishonored because his lessee, who was to make payments directly into Ghanei's bank account, defaulted on the lease. A letter giving notice of acceleration and intent to foreclose was mailed by certified mail, to the address specified in the deed of trust. The trustee was requested to exercise his powers under the deed of trust and to sell the property. Notice was posted at the Dallas County Courthouse door and the property was sold at public auction on July 3, 1979. The Lambeths were purchasers at the foreclosure sale. On July 5, 1979, Ghanei returned to Dallas from Iran. At that time he learned that the property had been sold at foreclosure. Ghanei offered to make all back payments, make two months' payments in advance, plus 10% interest, pay the property taxes and pay the Lambeths' attorney's fees. This offer was rejected. Ghanei and Lido then sued both the Lambeths, to set aside the foreclosure sale, and Houston Irvine Industrials, for failing to make lease payments and causing Ghanei's payment checks to be dishonored. The Lambeths moved for summary judgment and for severance of the claim against the co-defendant, Houston Irvine Industrials. Both motions were granted. It is from the order granting the Lambeths' motion for summary judgment that Ghanei and Lido have appealed.

Lido and Ghanei complain on appeal that the trial court erred in granting summary judgment for the Lambeths since factual and legal issues exist regarding (1) whether written notice sent to an address, know to be incorrect, satisfies the notice requirements of the deed of trust and statutory law of Texas, and (2) whether the Lambeths waived their rights to proceed under the deed of trust by accepting the post-dated checks.

### NOTICE

■ The deed of trust, in its printed portions, provides that, in the event of default, notice shall be given by certified mail to the debtor "at the most recent address as shown on the records of the holder of the debt." In a typed-in clause, however, the parties expressly contracted as follows:

It is expressly agreed that for any written notice to the debtor required under the terms of this Deed of Trust and the Laws of the State of Texas, the address of the Grantor herein shall be:

Abbas Ghanei, Trustee
5646 Milton
Suite 143
Dallas, Texas 75206

Absent any modification of the deed of trust, or new agreement, this contracted-for address, added by the parties, supersedes the printed "last known address, provision

of the deed of trust and Ghanei is bound by his typed contract. *Gibson v. Watson*, 315 S.W.2d 48 (Tex.Civ.App.—Texarkana 1958, writ ref'd n. r. e.); *J. K. Hughes Oil Co. v. Mayflower Investment Co.*, 193 S.W.2d 971 (Tex.Civ.App.—Texarkana 1946, writ ref'd).

■ It should be noted that the deed of trust does not require actual receipt of the notice by the debtor. Only mailing is required. The trustee notified Ghanei of the proposed sale by certified mail sent to the address expressly set out in the deed of trust. This was sufficient. Neither the deed of trust, nor Tex.Rev.Civ.Stat.Ann. art. 3810 (Vernon 1966) require actual receipt of the notice. The deed of trust requires only that written notice be sent to the address on Milton. Article 3810 provides that "notice shall be completed upon *deposit* of the notice, enclosed in a postpaid wrapper." [Emphasis added.] Thus, article 3810 merely establishes a minimum level of protection for the debtor and the parties here contracted within such statutory minimum. *Armenta v. Nussbaum*, 519 S.W.2d 673 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.).

■ While the record reflects that Ghanei informed his creditor that he was changing his actual address temporarily, Ghanei stops short of claiming that the agreement set out in the deed of trust, fixing the address of Ghanei for notice purposes, was changed or superseded by a new address to which he and the Lambeths mutually agreed. We hold that the agreement of the parties, fixing a specified address for the debtor to which notice of foreclosure was to be sent, was not affected by the debtor's mere change of actual address. We also hold that the foreclosure sale cannot be set aside for want of notice to the debtor when it is undisputed that notice was *sent*, as the parties agreed, and to the *address* upon which the parties agreed.

Ghanei argues that our supreme court has held in *Pachter v. Woodman*, 547 S.W.2d 954 (Tex.1977) that a sale should be set aside if a breach of an agreement for notice is shown. We do not disagree with *Pachter*. We simply fail to find in our record any "agreement" for notice to Ghanei other than the notice actually given which was in conformity with the parties' agreement in the deed of trust. Ghanei would have us hold that a creditor's mere knowledge of the physical whereabouts of the debtor supersedes the prior written agreement of the parties. *Pachter* does not support such a conclusion, nor have we been cited to a case that does support such a conclusion.

## DEFAULT

■ Ghanei also urges that the foreclosure sale should be set aside because he executed and delivered to his creditors nine separate checks (each for the amount of a future maturing installment, and each postdated to coincide with a future installment due date) which the creditor had accepted as *payment* and hence, that there was no "default" upon which the foreclosure could stand. The record does not reflect any agreement upon the part of the creditors to treat the post-dated checks as "payment." Absent agreement, a check is only a conditional payment which is made absolute when the check is presented and honored. *See Texas Mutual Life Ins. Ass'n. v. Tolbert*, 134 Tex. 419, 136 S.W.2d 584 (1940); *Kaiser v. Northwest Shopping Center*, 544 S.W.2d 785 (Tex.Civ.App.—Dallas 1976, no writ). We hold that, since the record shows that Lambeth did not agree to accept the post-dated checks as "payment," the nonpayment of Ghanei's check when presented constituted a default which would support acceleration of the debt of Ghanei and a foreclosure on the property.

Affirmed.