**LIDO INTERNATIONAL, INC. et al.**

v.

**Jerrel LAMBETH et ux.**

**No. B–9636.**

Supreme Court of Texas.

Jan. 28, 1981.

Warren E. Zimmerman, Dallas, for petitioners.

William F. Billings and James L. Schutza, Dallas, for respondents.

BARROW, Justice.

Abbas Ghanei, an Iranian national, and Lido International, Inc., a Texas corporation in which Ghanei is the sole stockholder,[1] brought this suit against Jerrel Lambeth and wife to vacate and set aside a foreclosure sale of commercial real estate by Lambeth on July 3, 1979. Ghanei sued Houston Irvine Industrials, Inc. also and alleged that his default on the note was caused by Houston Irvine's breach of a lease agreement of the subject property. The trial court granted Lambeth a take-nothing summary judgment and severed the claim by Ghanei against Houston Irvine. The court of civil appeals affirmed. 601 S.W.2d 112. We reverse the judgments of the lower courts and remand the cause to the trial court.

The proper rules for review of a summary judgment have been established by this Court. *See* Rule 165a, Tex.R.Civ.Proc.; *Wilcox v. St. Mary's University of San Antonio*, 531 S.W.2d 589 (Tex.1975); *Great American R. Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41 (Tex.1965).

1. The parties treat Ghanei and Lido International in this proceeding as one entity.

Under these rules, the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. In deciding whether or not there is a disputed material fact issue precluding summary judgment, all evidence and every reasonable inference therefrom favorable to the non-movant will be taken as true. After a review of the summary judgment record in this light, we hold that Lambeth failed to establish as a matter of law that notice of the foreclosure sale was given to Ghanei as required by Article 3810, Tex.R.Civ.Stat. Ann.

The following facts are contained in the affidavit of Ghanei which was filed in opposition to the motion for summary judgment. On August 24, 1977, Ghanei purchased the real property involved here from Lambeth for the sum of $350,000. Ghanei paid $50,-000 down, and secured the balance by a promissory note and deed of trust. Monthly payments were regularly made on this note as required until April 1979. In February of 1979, the property was leased by Ghanei to Houston Irvine for a ten year period. The monthly lease payments were equal to the amount of the payments required to be made monthly on the note.

On March 9, 1979, Ghanei personally visited Lambeth at the latter's office. Ghanei informed Lambeth that because of the revolution in Iran it was necessary that he return to protect his family and property and that he might be gone from six to nine months. In order to make the monthly payments on the note, Ghanei delivered nine post-dated checks to Lambeth. Lambeth was advised that these checks would be covered by the monthly lease payments from Houston Irvine. Ghanei gave to Lambeth an address and telephone number in Iran where he could be reached in the event any question came up regarding the property. Ghanei also gave Lambeth the Dallas address of the interpreter who was with Ghanei in Lambeth's office. Ghanei then left for Iran and did not return until July 5, 1979.

Houston Irvine failed to make its agreed monthly lease payment in April 1979; because of this, the April check of Ghanei was dishonored when presented to the bank by Lambeth. Thereafter, Lambeth instructed the trustee under the deed of trust to accelerate the note and sell the property at a foreclosure sale on July 3, 1979. The record is uncontroverted that the only notice sent to Ghanei regarding this foreclosure was addressed to the Dallas address contained in the deed of trust. It was not addressed to Ghanei at the Iran address, nor was notice sent to the interpreter's address in Dallas. The summary judgment record establishes that Ghanei did not receive notice of the foreclosure sale until after he returned to the United States on July 5, 1979. He promptly contacted Lambeth and offered to make up the back payments on the note together with additional interest and to pay Lambeth's attorney fees. Ghanei's offer was rejected by Lambeth and this suit was filed shortly thereafter.

In this summary judgment proceeding, Lambeth had the burden of showing that notice of the sale was given as required by law or was not required. *Pachter v. Woodman*, 547 S.W.2d 954 (Tex.1977). There is no contention here that Ghanei had actual notice of the proposed sale. *Cf. Hausmann v. Texas Sav. & Loan Ass'n*, 585 S.W.2d 796 (Tex.Civ.App.—El Paso 1979, writ ref'd n. r. e.); *Forestier v. San Antonio Sav. Ass'n*, 564 S.W.2d 160 (Tex.Civ.App.—El Paso 1978, writ ref'd n. r. e.).

Article 3810, as amended effective January 1, 1976, requires the holder of a note secured by a deed of trust to serve written notice of the proposed foreclosure sale at least 21 days preceding the date of sale. The statute provides in part:

> "Service of such notice shall be completed upon deposit of the notice, enclosed in a postpaid wrapper, properly addressed to such debtor AT THE MOST RECENT ADDRESS AS SHOWN BY THE RECORDS OF THE HOLDER OF THE DEBT, in a post office or official depository under the care and custody of the United States Postal Service." (Emphasis Added)

Lambeth urges that he gave proper notice by mailing the notice to Ghanei at the address as agreed upon in the deed of trust. If Lambeth's records showed a more recent address, then this notice did not comply with the statutory requirement of addressing the notice to the most recent address as shown by the records of the holder of the debt. It would defeat the legislative purpose of the amended statute if the debtor could not change his address after the execution of the deed of trust.

The affidavit of Ghanei that he furnished Lambeth with a new address on March 9, 1979 raises a fact question that this was the most recent address as shown by Lambeth's records. Since notice was not sent to that address, there was no compliance with Article 3810. *Krueger v. Swann*, 604 S.W.2d 454 (Tex.Civ.App.—Tyler 1980, writ ref'd n. r. e.). We hold that Lambeth failed to establish conclusively that there was no fact issue so as to entitle Lambeth to a summary judgment.

The judgments of the lower courts are reversed and the cause is remanded to the trial court.