**Opinion issued December 11, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00861-CV

———————————

**BENNIE DEWEESE, Appellant**

**V.**

**OCWEN LOAN SERVICING L.L.C. AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FEDERAL HOME LOAN MORTGAGE, Appellees**

---

**On Appeal from the 55th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-35077**

---

## MEMORANDUM OPINION

Bennie Deweese appeals the trial court's rendition of summary judgment in favor of Ocwen Loan Servicing L.L.C. and Mortgage Electronic Registration Systems, Inc. as nominee for Federal Home Loan Mortgage (MERS). After

Ocwen foreclosed on Deweese's home, Deweese sued to quiet title, for tortious interference with contract, statutory fraud, and for a declaratory judgment that the foreclosure was invalid. Ocwen and MERS filed traditional and no-evidence motions for summary judgment on all of Deweese's claims. The trial court granted summary judgment and rendered a take-nothing judgment against Deweese. Deweese challenges the summary judgment, contending that he raised fact issues regarding appellees' standing to foreclose and failure to comply with the statutory notice requirements. We affirm.

## Background

In August 2006, Deweese executed a note for $93,500 payable to Taylor, Bean, & Whitaker Mortgage Corporation. The note was secured by property at 14502 Wadebridge Way in Houston, Texas, and Deweese concurrently executed a deed of trust perfecting a lien interest in the property.

In June 2010, Taylor, Bean, & Whitaker indorsed the note to Ocwen Loan Servicing L.L.C. On July 17, 2010, Ocwen sent Deweese a notice of default by first class certified mail, notifying him that more than $5,000 in payments were past due. The notice was deposited in the mail, postage prepaid, and sent to Deweese at his last known address. The notice stated that Deweese had 31 days to cure the default before Ocwen would exercise its right to foreclose and accelerate the amounts owed.

Deweese did not cure the default, and on November 9, 2010, Ocwen sent by certified mail a Notice of Acceleration of Loan Maturity. With that notice, Ocwen also sent a Notice of Foreclosure Sale, which stated that the sale would occur on December 7, 2010. The sale was later moved to January 4, 2011, so on December 13, 2010, Ocwen sent by certified mail a Notice of Reposting and Sale notifying Deweese of the change in the sale date. At the January 4 sale, the property was sold to the Federal Home Loan Mortgage Corporation.

Deweese initially sued Ocwen in June 2011 to cancel the note based on alleged fraud. Deweese twice amended his pleadings, to add MERS as a defendant, and to allege that Ocwen and MERS lacked standing to foreclose because neither was the holder of his note. The live pleading at the time Ocwen and MERS moved for summary judgment asserted:

- a claim to quiet title, alleging that neither Ocwen nor MERS could demonstrate an interest in his property;

- a claim for tortious interference with contract, arguing that Ocwen and MERS interfered with his contract with Taylor, Bean, & Whitaker by improperly foreclosing on his property;

- a claim for statutory fraud, alleging that Ocwen and MERS misrepresented that they had standing to foreclose on his property; and

- a request for a declaratory judgment that Ocwen and MERS lack standing to foreclose on his property.

Ocwen and MERS moved for summary judgment on all of Deweese's claims. They argued that their summary-judgment evidence conclusively showed

3

that Ocwen was the holder of Deweese's note and was entitled to foreclose on the property, and therefore all of Deweese's claims must fail as a matter of law. They also argued that there was no evidence supporting essential elements of Deweese's tortious interference, statutory fraud, and declaratory judgment claims.

In response, Deweese argued that the lien on his property was never transferred to Ocwen, and thus Ocwen could not foreclose on the property. He also argued that Ocwen and MERS did not have standing to enforce the note. Deweese also argued that Ocwen's summary-judgment evidence did not conclusively prove that the notice of default was properly served.

The trial court granted Ocwen and MERS's motion for summary judgment and rendered a take-nothing judgment against Deweese without specifying its reason for doing so. Deweese appealed.

## Discussion

Deweese contends that the trial court erred in granting summary judgment because he raised fact issues regarding whether appellees had standing to foreclose and whether they complied with statutory notice requirements.

### A.    Standard of Review

We review a trial court's summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold

the trial court's judgment if any of the grounds are meritorious. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

To prevail on a no-evidence motion for summary judgment, the movant must establish that there is no evidence to support an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact as to each of the elements specified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Hahn*, 321 S.W.3d at 524.

In a traditional summary judgment motion, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).

**B.**     **Did appellees conclusively prove that Ocwen was the holder of the note?**[1]

In his first issue, Deweese contends that summary judgment was improper because the attempted transfer of the note to appellees was improper and appellees thus lacked standing to foreclose.

**1.     Applicable Law**

A holder is "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." TEX. BUS. & COM. CODE ANN. § 1.201(21)(A) (West 2009).  A person can become the holder of an instrument when the instrument is issued to that person, or he can become a holder by negotiation. TEX. BUS. & COM. CODE ANN. § 3.201 cmt. 1 (West 2002).

Negotiation is the "transfer of possession . . . of an instrument by a person other than the issuer to a person who thereby becomes its holder."[2] *Id.* § 3.201(a). When the instrument is paid to an identified entity, "negotiation requires transfer of possession of the instrument and its indorsement by the holder." *Id.* § 3.201(b);

---

[1]     We typically review the propriety of summary judgment under the no-evidence standard first.  *See Parker v. Valerus Compression Servs., LP*, 365 S.W.3d 61, 65 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).  In this case, however, we address the ruling on the traditional summary judgment first because it is dispositive of all of Deweese's claims. *See, e.g.*, *Poag v. Flories*, 317 S.W.3d 820, 825 (Tex. App.—Fort Worth 2010, pet. denied).

[2]     For these purposes, the "issuer" is Deweese, because he is identified in the note as the person undertaking to pay.  *See* TEX. BUS. & COM. CODE ANN. § 3.103(a)(7) (West Supp. 2014), § 3.105(c) (West 2002).

*Leavings v. Mills*, 175 S.W.3d 301, 309 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Transfer of an instrument vests in the transferee any right of the transferor to enforce the instrument. TEX. BUS. & COM. CODE ANN. § 3.203(b) (West 2002).

An "indorsement" is a signature, that alone or accompanied by other words is made on an instrument for, among other reasons, negotiating the instrument. TEX. BUS. & COM. CODE ANN. § 3.204(a) (West 2002). The indorsement must be written on the instrument or on a paper firmly affixed to it. *Leavings*, 175 S.W.3d at 309. When specially indorsed, an instrument becomes payable to the identified person and may be negotiated only by that person's indorsement. TEX. BUS. & COM. CODE ANN. § 3.205(a) (West 2002).

When a mortgage note is transferred, the mortgage or deed of trust is also automatically transferred to the note holder by virtue of the common-law rule that "the mortgage follows the note." *Campbell v. Mortg. Elec. Registration Sys., Inc.*, No. 03-11-00429-CV, 2012 WL 1839357, at *4 (Tex. App.—Austin May 18, 2012, pet. denied) (mem. op.).

### 2. Analysis

Appellees' summary-judgment evidence conclusively proved that Ocwen was in possession of Deweese's note since June 2010. *See* TEX. BUS. & COM. CODE ANN. § 3.201. The indorsement is written on the note, signed by Taylor, Bean, & Whitaker, and specifically provides that payment on the note shall be

made to Ocwen. *See* TEX. BUS. & COM. CODE ANN. §§ 3.204(a), 3.205(a); *Leavings*, 175 S.W.3d at 309. The signed indorsement states: "Without recourse, pay to the order of Ocwen Loan Servicing LLC By: Taylor, Bean & Whitaker Mortgage Corp." Therefore, the summary-judgment evidence conclusively established that Ocwen is the holder of the note and entitled to enforce it. *See* TEX. BUS. & COM. CODE ANN. §§ 3.201(b), 3.203(b); *Leavings*, 175 S.W.3d at 309.

Deweese concedes that MERS is merely a nominee on the deed of trust with no corresponding interest in the note. App. Br. 14. But Deweese argues that MERS was required to indorse the note in order for the transfer to Ocwen to be valid. App. Br. 25. In other words, he contends that the deed trustee and the lender must both consent to the transfer of the note. We disagree. "[T]he note and the deed of trust are separate bundles of rights and obligations, and the deed trustee, who has the power of sale, need not be the same person or entity to whom the underlying debt is owed." *Mortg. Elec. Registration Sys., Inc. v. Khyber Holdings, L.L.C.*, No. 01-11-00045-CV, 2012 WL 3228717, at *4 (Tex. App.— Houston [1st Dist.] Aug. 9, 2012, no pet.) (mem. op.) (citing *Hammonds v. Holmes*, 559 S.W.2d 345, 347 (Tex. 1977) (deed trustee may be different person or entity than secured party to whom debt is owed)); *see* TEX. PROP. CODE ANN. § 51.0074 (West 2014) (deed of trust confers on deed trustee power to sell the property pledged in the deed); *Stephens v. LPP Mortg., Ltd.*, 316 S.W.3d 742, 747

8

(Tex. App.—Austin 2010, pet. denied) (when a debt is memorialized by a note and a lien, the note and the lien constitute two separate bundles of rights and obligations). Thus, the fact that only Taylor, Bean & Whitaker, and not MERS, indorsed the note to Ocwen has no impact on the indorsement's validity. *See Hammonds*, 559 S.W.2d at 347; *Khyber Holdings, L.L.C.*, 2012 WL 3228717, at *4.

We conclude that the summary-judgment evidence conclusively established that Ocwen had standing to enforce the note and we overrule Deweese's first issue.[3]

## C. Did appellees conclusively prove compliance with the statutory notice provisions?

In his third issue, Deweese contends that he raised a fact issue regarding whether the appellees complied with Section 51.002(d) of the Property Code in mailing the notice of default, and therefore the trial court erred in granting summary judgment.

---

[3] As pleaded, all of Deweese's claims relied upon his allegation that neither Ocwen nor MERS had standing to foreclose. Because Ocwen conclusively proved that it had standing to foreclose and did so, and the summary-judgment evidence proved and the parties agree that MERS was merely the deed trustee, disposition in the defendants' favor on all claims was proper regardless of defendant. Accordingly, we overrule Deweese's second and fourth issues, complaining specifically about judgment on his tortious interference and declaratory judgment claims.

9

### 1. Applicable Law

The Texas Property Code sets forth foreclosure notice requirements. Section 51.002(d) of the Property Code requires that a mortgage servicer "shall serve a debtor in default under a deed of trust . . . with written notice by certified mail stating that the debtor is in default under the deed of trust . . . and giv[e] the debtor at least 20 days to cure the default" before giving notice of a foreclosure sale. *See* TEX. PROP. CODE ANN. § 51.002(d) (West 2014). Section 51.002(e) provides:

> Service of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service.

*Id.* § 51.002(e) (West 2014).

### 2. Analysis

Appellees' summary-judgment evidence included a copy of the notice of default, which indicated that it was sent via first class certified mail on July 17, 2010. The summary-judgment evidence also included an affidavit from Letron Kelly, a contract manager at Ocwen Loan Servicing L.L.C. Kelly averred that he was familiar with the business records maintained by Ocwen for the purpose of servicing mortgage loans and pursuing delinquencies, and that the copy of the notice of default was an exact copy of the original. Kelly also averred that the notice of default was "deposited in the United States mail, postage prepaid" and

was addressed to Deweese at his last known address. This is prima facie evidence of service of the notice of default on Deweese. *See* TEX. PROP. CODE ANN. § 52.002(d), (e).

In response, Deweese alleged that the certified mail number on the notice of default "could not be verified" with the U.S. Post Office. However, the only evidence Deweese adduced regarding the notice of default was an averment in his responsive affidavit that he did not receive the notice. Whether Deweese received the notice does not raise a fact issue regarding Ocwen's proof that the notice was "deposited in the United States mail, postage prepaid and addressed" to Deweese at his last known address. TEX. PROP. CODE ANN. § 51.002(e) ("Service of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address."); *Lambert v. First Nat'l Bank of Bowie*, 993 S.W.2d 833, 835 (Tex. App.—Fort Worth 1999, pet. denied) (debtor's claim that there was no evidence he received notice of default did not raise fact issue regarding service of notice because Section 51.002(e) does not require proof of receipt); *see also Adebo v. Litton Loan Serv., L.P.*, No. 01-07-00708-CV, 2008 WL 2209703, at *4 (Tex. App.—Houston [1st Dist.] May 29, 2008, no pet.) (mem. op.) ("[T]he dispositive inquiry under section 51.002(e) . . . is not *receipt* of notice, but, rather, *service* of notice.") (emphasis in original). Accordingly, because appellees adduced prima

facie evidence of service of the notice of default, Deweese cannot raise a triable issue of fact by denying that he received the notice. *See Lambert*, 993 S.W.2d at 835 (no fact issue regarding service where debtor argued there was no evidence of receipt of notice); *see also Adebo*, 2008 WL 2209703, at *3–4 (where mortgage servicer adduced prima face evidence of service of notice of default, debtor could not raise fact issue by denying receipt of notice). Deweese argues that the appellees should have provided additional evidence regarding service, but appellees met their burden under Section 51.002 to establish prima facie evidence of service. *See* TEX. PROP. CODE ANN. § 51.002(e).

Thus, we hold that appellees conclusively showed they satisfied the statutory notice requirements. We overrule Deweese's third issue.

## Conclusion

We affirm the trial court's judgment.


Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.